UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RONALD MIDDLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-11330-KAR |
| | ) | |
| DR. SCOTT MURRAY, P.A. COOKE, | ) | |
| M.L.P. GARCIA, DR. LEPAINE, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND PLAINTIFF'S MOTION TO GRANT PLAINTIFF'S
COMPLAINT
(Dkt. Nos. 28 & 41)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

This is a lawsuit by an inmate alleging a violation of his Eighth Amendment rights.

Plaintiff Ronald Middleton is serving a prison sentence in federal custody.  He has brought a *pro se* complaint against four Bureau of Prison ("BOP") officials under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  The complaint alleges that their denial of medical treatment for complications from torn ligaments in his elbow violated the Eighth Amendment.  The parties have consented to this court's jurisdiction (Dkt. No. 39).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  The matter is presently before the court on defendants' motion to dismiss (Dkt. No. 28).  Middleton has filed a Motion to Grant Plaintiff's Complaint (Dkt. No. 41) which the court treats as an opposition to the defendants' motion to dismiss and an affirmative motion by Middleton.  For the reasons set forth below, the motion to dismiss will be

1

granted, the motion to grant the plaintiff's complaint will be denied, and the complaint will be ordered dismissed without prejudice.

II.    BACKGROUND

A.  Factual Background

The facts are as set forth in the complaint except where otherwise noted.

In March 2011, while Middleton was incarcerated at the United States Penitentiary in Canaan, he informed the medical personnel at the facility that his right elbow was inflamed (Dkt. No. 1-1, Compl. at 3).[1]  The complaint does not describe what medical care Middleton was afforded in response to his complaint, other than to note that x-rays were taken at USP Canaan after he reported inflammation, swelling, and discoloration of his right arm (Compl. at 3-4).

In June 2015, Middleton was transferred to FCI Estill in South Carolina.  On or around September 5, 2015, Middleton experienced severe inflammation and swelling with discoloration of his right arm (Compl. at 3).  Middleton informed a correctional officer who immediately called on the medical department to assess Middleton's medical condition (Compl. at 3-4).  On September 8, 2015, he was diagnosed with "Olecranon Bursitis" and scheduled for treatment to decrease the inflammation and his pain (Compl. at 4).  On September 18, 2015, defendant Garcia, who is described as a medically licensed practitioner, drained fluid from Middleton's elbow, gave him an injection, and indicated (incorrectly) that the elbow problem was resolved. In October 2015, Plaintiff was given allopurinol to treat gout in his right elbow.  On October 15, 2015, Middleton was seen by Dr. Lepiane,[2] who stated that Middleton's elbow problem had been

[1] Middleton did not number the paragraphs in his narrative complaint.  References are to page numbers in docket entry number 1-1.

[2] The government states that, although Middleton named Dr. Lepaine in the complaint, the doctor who saw Middleton at FCI Estill is identified as Lepiane in the medical records (Dkt. No.

misdiagnosed and discontinued the allopurinol (Compl at 4).  On October 21 and 29, 2015,

Garcia drained fluid from Middleton's elbow (Compl. at 4-5).  Middleton was referred to an

orthopedic/elbow specialist.

Middleton saw the orthopedic specialist twice in November 2015.  During the first visit,

Middleton's elbow was cut open to drain a staphylococcus infection that resulted from the earlier

treatments at the prison.  After another appointment with Garcia, who checked on the staph

infection, Middleton returned to the orthopedist, who reviewed and continued to treat the staph

infection.  The orthopedist was unable to review MRI results during these visits because FCI

Estill failed to send the MRI results to the doctor (Compl. at 5).  On December 23, 2015,

Middleton was seen by Garcia, who told Middleton to ask the orthopedist to order an MRI.  The

orthopedist agreed that an MRI was necessary, ordered one, and told Middleton that the

orthopedist would request a follow-up appointment after the MRI was completed (Compl. at 5).

On June 10, 2016, an examination with the results on the MRI available resulted in a diagnosis

of torn tendons and ligaments in the right elbow.  The orthopedist requested some follow-up

tests.  In the meantime, Middleton was placed on a pain management plan of cortisone shots,

which was ineffective (Compl. at 5-6).

On or around November 1, 2017, Middleton was informed "that his injury sustained to

[his] elbow was too far out for su[r]gery to have any actual benefit" (Compl. at 6).  Middleton

alleges that this end point was the result of FCI Estill and BOP medical staff deliberately

providing substandard medical care to avoid incurring costs and that it was the custom and

practice to provide as little care as possible for as long as possible in the hope that "things will

---

28 at 1 n.1).  The court uses the spelling provided by the government, which is consistent with
the spelling in the medical records Middleton attached to his Motion to Grant Plaintiff's
Complaint (Dkt. No. 42-1 at 4, 5, 8).

either heal and get better on the[ir] own or that the inmate will just give up on requesting help" (Compl. at 6).

Middleton alleges that he sought follow-up medical care at FMC Devens from physician's assistant Cooke on June 11, 2018 due to extreme pain and limited use of his right arm and elbow (Compl. at 7).  Middleton's right arm was placed in a partial cast during his appointment with Cooke, who also referred him to physical therapy.  The physical therapy services, however, were denied (Compl. at 7).

Middleton's memorandum in support of his motion to grant his complaint (Dkt. No. 41) includes additional allegations about medical care provided – or withheld – at FMC Devens. Those allegations are not properly before the court at this time in connection with the defendants' Rule 12(b)(6) motion because they are not in the complaint and Middleton has not moved for leave to amend his complaint.  Because of the basis on which the case will be resolved, the court has not set forth Middleton's further allegations about shortcomings in the medical care that was provided to him at FMC Devens on and after June 10, 2018 (Dkt. No. 42 at 4-6).

Middleton seeks injunctive relief in the form of an order to the BOP to order an MRI "so that his medical condition can once and for all be diagnosed" and court intervention after the MRI so that the BOP gives Middleton medical options and input such that he can make an intelligent decision about his course of treatment (Compl. at 15), compensatory damages for pain and suffering, and punitive damages to deter the BOP from deferring necessary medical care to inmates (Compl. at 15-16).

B.  Procedural Background

Middleton filed his complaint on June 14, 2019 (Dkt. No. 1).  His motion for leave to proceed in *forma pauperis* was filed and granted on June 25, 2019 (Dkt. Nos. 5, 6).  Because Middleton named two individuals who were employed by the BOP in South Carolina whose involvement with Middleton occurred at FCI Estill in South Carolina, the United States District Court for the District of South Carolina opened a separate case on its docket, numbered C/A No. 18-cv-2624-BHH (Dkt. No. 40).  The presiding District Judge in South Carolina offered Middleton the opportunity to clarify whether he desired to proceed with an action in South Carolina against the South Carolina defendants (Lepiane and Garcia).  Receiving no response from Middleton, the presiding District Judge in South Carolina dismissed the case without prejudice on December 12, 2019 (Dkt. No. 40).

The defendants filed their motion to dismiss for failure to state a claim and for lack of personal jurisdiction over Garcia and Lepiane on March 13, 2020 (Dkt. No 28).  On June 26, 2020, Middleton filed his motion to grant his complaint, which the court treats in part as his opposition to the defendants' motion to dismiss as well as a request for affirmative relief (Dkt. No. 41, 42).

III.     DEFENDANTS' MOTION TO DISMISS/MOTION TO GRANT PLAINTIFF'S COMPLAINT

A. Personal Jurisdiction over Lepiane and Garcia

"Personal jurisdiction refers to a court's 'power to require the parties to obey its [orders].'"  *Roberts v. Jack L. Marcus Co.*, Civil Action No. 17-117882-LTS, 2018 WL 443445, at *2 (D. Mass. Jan. 16, 2018) (alteration in original) (quoting *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008)).  For defendants like Lepiane and Garcia, who so far as appears from the complaint, took no action in Massachusetts related to Middleton, "the due process clause of the United States Constitution 'protects an individual's liberty interest in not being subject to the

binding judgments of a forum with which he has established no meaningful "contacts, ties, or

relations."'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)

(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945))).

There is no suggestion in the complaint that either Lepiane or Garcia has any meaningful

contacts, ties, or relations with Massachusetts "such that they would anticipate being haled into

court in Massachusetts to respond to allegations concerning" medical treatment or the lack

thereof afforded to Middleton while he was incarcerated at FCI Estill in South Carolina. *Id.*, at

*2; *see also Smolka v. United States*, Civil Action No. 08-40166-DPW, 2010 WL 1170438, at *1

(D. Mass. Mar. 25, 2010) ("To the degree that the claims [of deficient medical treatment]

concern the actions of individual defendants who performed medical services outside

Massachusetts, there is no personal jurisdiction of this court over those defendants.") (citing

*Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005)); *cf. Depew v. Hawk*, 20 F. Supp. 2d

132, 134 (D. Mass. 1998) (dismissing a *Bivens* claim for lack of personal jurisdiction over a

prison official who allegedly read the plaintiff's correspondence with his attorney because the

prison official neither lived nor worked in Massachusetts and took no steps against the plaintiff

in Massachusetts).

Plaintiff concedes that he can find no case law that would support this court's exercise of

jurisdiction over Lepiane and Garcia for the medical care they provided to him while he was at

FCI Estill.  He asks the court to consider his claim that Lepiane and Garcia deliberately delayed

treating him in South Carolina, then passed him on to another correctional institution, leaving it

to someone else to handle his continuing severe medical problems (Dkt. No. 42 at 11).  The court

is not free to ignore binding precedent on this point.  "Principles of due process require that

[Lepiane and Garcia] only be brought into court in a jurisdiction with which they have had some

appreciable minimum contacts." *Smolka*, 2010 WL 1170438, at *1 (citing *Int'l Shoe Co.*, 326

U.S. at 310).  Accordingly, the court will dismiss Middleton's claims against Lepiane and Garcia

without prejudice for lack of personal jurisdiction.[3]

      B.  <u>Failure to State a Claim Against Murray and Cooke</u>

      1.  Standard of Review

"A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a

claim." *Ngomba v. Olee*, CIVIL ACTION NO. 18-11352-MPK, 2020 WL 107969, at *2 (D.

Mass. Jan. 9, 2020).  In ruling on the motion, a court must "treat all well-pleaded facts in the

complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin.*

*Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v.*

*Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)).  "In order to survive a motion to dismiss under

Rule 12(b)(6), the plaintiff must provide 'enough facts to state a claim to relief that is plausible

on its face.'" *Ngomba,* 2020 WL 107969, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "A

determination of plausibility is 'a context-specific task that requires the reviewing court to draw

---

[3] The court acknowledges that Middleton seeks injunctive relief in the form of an order directing the BOP to provide him with appropriate medical care.  A plaintiff can seek injunctive relief against a defendant named in an official capacity without necessarily running into the problem of personal jurisdiction.  *See Depew*, 20 F. Supp. 2d at 134.  Middleton, however, seeks injunctive relief against the BOP and has not named Lepiane or Garcia in an official capacity.  Further, there are no facts in Middleton's complaint or his motion to grant his complaint to suggest that either Lepiane or Garcia has an official or supervisory role that would give either of them the responsibility or the ability to direct the medical care afforded to Middleton when he is incarcerated at a facility other than FCI Estill (Dkt. No. 41 at 2).  In these circumstances, Middleton's request for injunctive relief provides no basis for the court to exercise personal jurisdiction over Lepiane or Garcia.

on its judicial experience and common sense.'"  *Grajales v. P.R. Ports Auth.,* 682 F.3d 40, 44

(1st Cir. 2012) (quoting *Iqbal,* 556 U.S. at 679).  "[L]abels and [legal] conclusions, and a

formulaic recitation of the elements of a cause of action" are insufficient to "raise a right to relief

above the speculative level."  *Twombly,* 550 U.S. at 555. "Simply put, the court should assume

that well-pleaded facts are genuine and then determine whether such facts state a plausible claim

for relief."  *Ngomba,* 2020 WL 107969, at *2 (citing *Iqbal,* 556 U.S. at 679).

A document filed by a self-represented party "'is to be liberally construed, and a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'"  *White v. Spaulding*, Civil Action No. 19-11102-FDS, 2020 WL

1974333, at *3 (D. Mass. Apr. 24, 2020) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Nonetheless, pleadings by self-represented litigants still must set forth "'factual allegations,

either direct or inferential, respecting each material element necessary to sustain recovery under

some actionable legal theory.'"  *Id.* (quoting *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir.

2008)).

### 2.   Whether the Complaint States an Eighth Amendment Claim

"The Eighth Amendment requires prison officials to 'provide humane conditions of

confinement . . . ensure that inmates receive adequate food, clothing, shelter, and medical care,

and . . . 'take reasonable measures to guarantee the safety of inmates.'"  *Sepulveda v. UMass

Corr. Health, Care*, 160 F. Supp. 3d 371, 384-85 (D. Mass. 2016) (alterations in original)

(quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  "To prove that a failure to provide

medical care violates the Eighth Amendment, 'a prisoner must satisfy both of two prongs:  an

objective prong that requires proof of a serious medical need, and (2) a subjective prong that

mandates a showing of prison administrators' deliberate indifference to that need.'" *White*, 2020 WL 1974333, at *6 (quoting *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc)).

Serious medical needs "include those that have been 'diagnosed by a physician as mandating treatment, or [a need] that is so obvious that even a lay person would easily recognize the need for a doctor's attention.'" *Sepulveda*, 160 F. Supp. 3d at 385 (alteration in original) (quoting *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011)). "'The 'seriousness' of an inmate's needs may also be determined by reference to the effect of [any] delay of treatment.'" *Leavitt*, 645 F.3d at 497-98 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). "Substandard or negligent medical treatment, 'even to the point of malpractice,' is insufficient to state a claim under the Eighth Amendment." *Sepulveda*, 160 F. Supp. 3d at 385 (quoting *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 162 (1st Cir. 2006)).

"The subjective component requires the plaintiff to show that prison officials, in treating the plaintiff's medical needs, possessed a sufficiently culpable state of mind. That state of mind is one that amounts to deliberate indifference to the claimant's health or safety." *Zingg v. Groblewski*, 907 F.3d 630, 635 (1st Cir. 2018) (citing *Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2105)). Deliberate indifference may "take the form of 'wanton' or criminal recklessness" in the treatment provided to an inmate. *Id.* (citing *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)).

> To show such a state of mind, the plaintiff must provide evidence that the defendant had "actual knowledge of impending harm, easily preventable," [*Watson*, 984 F.2d at 540], and yet failed to take the steps that would have easily prevented the harm. Such a showing may be made by demonstrating that the defendant provided medical care that was "so inadequate as to shock the conscience," *Feeney*, 464 F.3d at 62 (quoting *Torraco v. Maloney*, 923 F.2d 231, 235 (1st Cir. 1991)), or, put otherwise, that was "so clearly inadequate as to amount to a refusal to provide essential care." *Torraco*, 923 F.2d at 234.

*Id.*

9

The focus of Middleton's complaint is the care, or lack thereof, that he got at FCI Estill, where, he alleges, serious swelling, inflammation, and discoloration in his right arm caused by torn ligaments and tendons in his elbow were ignored and mistreated, resulting in permanent damage that, he has been told, left him at a medical end point at which surgery will not improve the function of his elbow (Dkt. No. 1-1 at 3-6).  Because the court lacks personal jurisdiction over the care providers alleged by Middleton to have been responsible for the deficient medical care at FCI Estill, these allegations cannot provide a basis for relief in this court.  For purposes of an Eighth Amendment violation, a plaintiff must connect his allegations of inadequate medical care to the defendants who are before the court.  *See, e.g., Sepulveda*, 160 F. Supp. 3d at 384 (dismissing the plaintiff's claims against two individual doctor defendants because the plaintiff did not connect his allegedly inadequate medical care in prison to action or inaction by either of these doctors).

Middleton's complaint says little about the medical care he received after arriving at FMC Devens and even less about the roles Murray and Cooke played in that care.  Fairly read, Middleton's complaint alleges that, after he arrived at FMC Devens, he asked for follow-up medical care for his elbow "due to extreme pain and limited use of the right arm, specifically elbow."  Middleton represents that the condition of his elbow had progressed to such a "dire condition" that, when Middleton saw Cooke, Cooke "immediately" put his arm in a partial cast during the appointment.  Middleton was also "placed in p[h]ysical therapy," inferentially by Cooke (Compl. at 7).  After Middleton was assigned to physical therapy, he was refused services at the FMC Devens medical sick call (by an unnamed person or persons) and told to report pain issues to an (unnamed) physical therapist.  The therapist referred Middleton back to the sick call

process for pain relief, "and around and around it goes without any medical care being provided" (Compl. at 7).[4]

For purposes of this motion, the court accepts that, giving Middleton's complaint a generous construction, he has alleged facts that are sufficient, if barely, to state a plausible Eighth Amendment claim for deliberate indifference to a serious medical problem with his elbow and pain caused by that condition which was ignored by prison officials. *See Sepulveda*, 160 F. Supp. 3d at 385-86; *see also White*, 2020 WL 1974333, at *6 (finding that the plaintiff had adequately alleged a serious medical problem when multiple physicians had evaluated his injuries and concluded that some treatment, including physical therapy, medication or surgery, was necessary).

Missing from the complaint, however, are allegations that Cooke or Murray, in addressing Middleton's medical needs, "possessed a sufficiently culpable state of mind." *Zingg*, 907 F.3d at 635.  Other than identifying Murray as a defendant, Middleton's complaint does not allege that Murray "was personally involved in [Middleton's] medical care or treatment" at any point. *Sepulveda*, 160 F. Supp. 3d at 384.  Nor does the complaint allege that Murray functioned in a supervisory capacity as a director of medical services at FMC Devens.  In any event, "[i]n the context of a Section 1983 claim, "'supervisory liability cannot be predicated on a respondeat superior theory.'" *Id.* (quoting *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 14 (1st Cir. 2005)). When, as in this case, there are no allegations of direct involvement,

> "a supervisor may only be held liable where '(1) the behavior of [his]
> subordinates results in a constitutional violation and (2) the [supervisor's] action

---

[4] Middleton further alleges that the medical staff at FMC Devens "requ[es]ted what was noted and reffered (sic) to as 'D/W' for their elbow specialist as specifically noted in Medical Records. ([He has] yet to see that specialist)  There are notes with the discussion documented of the above mentioned elbow specialist follow up / D.W. diagnosis" (Compl. at 6-7).  The court cannot make sense of this allegation.

or inaction was *affirmatively link[ed]* to the behavior in the sense that it could be
characterized as 'supervisory encouragement, condonation or acquiescence or
gross negligence . . . amounting to deliberate indifference."

*Id.* (quoting *Whitfield*, 431 F.3d at 14) (alterations and emphasis in original) (quoting *Hegarty v.

Somerset Cty.*, 53 F.3d 1367, 1379-80 (1st Cir. 1995) (further internal quotations and citation

omitted)).  Middleton makes no allegation that suggests an affirmative link between Murray and

the allegedly inadequate care Middleton received at FMC Devens.  For this reason, the complaint

fails to state a claim against Murray.

Fairly read, Middleton's complaint alleges that Cooke recognized the "dire condition" of

Middleton's elbow from the outset, placing his right arm in a partial cast "immediately during

the exam" and referring Middleton to physical therapy (Compl. at 7).  Middleton does not

identify Cooke as the source of his problem in getting his elbow pain addressed by the physical

therapist and the sick call personnel or allege that he brought the problem to Cooke's attention

(Compl. at 7).  His general allegation that "no doctor or specialist has come up with a treatment

plan or goal for recovery" (Compl. at 8) is too general to be sufficient as an allegation that a

particular defendant was deliberately indifferent to Plaintiff's need for treatment for a serious

medical need.  Plaintiff has not alleged that Cooke had actual knowledge of imminent harm that

he could have prevented or provided medical care so deficient as to shock the conscience.  In

short, Middleton has not alleged facts sufficient to state an Eighth Amendment claim against

Cooke.  *See Zingg*, 907 F.3d at 635-36.

For the foregoing reasons, Middleton's complaint will be dismissed pursuant to Fed. R.

Civ. 12(b)(6) without prejudice for failure to state a claim against Murray and Cooke.

3.   Whether Middleton has Exhausted Administrative Remedies.

12

In the alternative, the defendants further contend that, as to Murray and Cooke, Middleton's complaint should be dismissed for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) (Dkt. No. 29 at 17-20). For his part, Middleton contends that he exhausted his administrative remedies by filing a final appeal with the Central Office in Washington D.C. (Dkt. No. 42 at 12).

"The PLRA requires prisoners to exhaust 'such administrative remedies as are available' before filing suit under any federal law." *White*, 2020 WL 1974333, at *4 (quoting 42 U.S.C. § 1997e(a)). To satisfy the exhaustion requirement, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)) (citation omitted). Thus, "'a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *White*, 2020 WL 197433, at *4 (quoting *Acosta v. U.S. Marshals Serv.*, 445 F.3d 509, 512 (1st Cir. 2006)). "[T]here is no 'futility' exception to the exhaustion requirement," *Sergentakis v. Channell*, 272 F. Supp. 3d 221, 227 (D. Mass. 2017) (citing *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002), and "[d]ismissal for failure to exhaust is mandatory." *Id.* (citing *Maraglia v. Maloney*, 365 F. Supp. 2d 76, 80 (D. Mass. 2005) ("While exhaustion under the PLRA is not jurisdictional, it is mandatory for inmates to satisfy this requirement before bringing an action in a court of law.")).

The purpose of compliance with a prison grievance system is "to provide timely notice of the claim and an avenue of redress short of litigation." *Acosta*, 445 F.3d at 512 (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). "[I]n order to make a claim against an individual or institution, the actions of the individual, even if not identified by name, or institution must

13

generally be the subject of an exhausted administrative remedy." *Smolka*, 2010 WL 1170438, at

*1. Other sessions of this court have observed or held that exhaustion of an Eighth Amendment

claim concerning medical care provided at one federal institution does not suffice to meet the

exhaustion requirement when an inmate moves to another institution and asserts denial of

medical care for a serious condition at this second penal institution. Thus, for example, in

*Smolka*, the court held that the plaintiff's requests for administrative remedies made as to his

medical treatment at FCI Big Springs in Texas did not satisfy the PLRA's exhaustion

requirement as to claims for deficiencies in plaintiff's medical treatment at FMC Devens, the

institution to which he was subsequently transferred. *Id.* Similarly, in *White*, the court observed

that, while it appeared that the plaintiff might have exhausted his administrative remedies based

on a denial of total hip replacement surgery, "those administrative proceedings took place before

his transfer to FMC Devens and his request was directed at the conduct of federal prison officials

in Texas. . . . [T]hat did not suffice to exhaust them as to this complaint [against FMC Devens

officials], which arose later and concerns different conduct by different federal officials." *White*,

2020 WL 1974333, at *4.[5]  *See also Savage v. Ofc. Michael Acquino*, 13-CV-6376, 2016 WL

5793422, at *7 (W.D.N.Y. Sept. 30, 2016) (dismissing claims against two defendants without

prejudice because the plaintiff's administrative grievance "made no mention" of the claims

against these two defendants).

　　　"PLRA exhaustion is an affirmative defense as to which defendants bear the burden of

proof." *White*, 2020 WL 1974333, at *5. It is well-established that inmates are not required to

allege or demonstrate failure to exhaust in their complaints. *Jones*, 549 U.S. at 216. A motion to

---

[5] The court declined to rule on the defendants' contention that the plaintiff had failed to exhaust
his administrative remedies at the motion to dismiss stage where the facts establishing the
defense depended on evidence extrinsic to the complaint. *White*, 2020 WL 1974333, at *5.

dismiss may be granted on the ground of failure to exhaust only where the facts establishing the defense are apparent from the face of the complaint or from other material properly considered in connection with a motion to dismiss. *See White*, 2020 WL 1974333, at *5 (citing *Riley v. Antonelli*, C.A. No. 19-00468-WES, 2020 WL 129057, at *2 (D.R.I. Jan. 10. 2020); *Hudson v. MacEachern*, 94 F. Supp. 3d 59, 67 (D. Mass. 2015)); *see also Sergentakis*, 272 F. Supp. 3d at 226-27.  Here, the court deems it appropriate to consider this alternate basis on which the defendants seek dismissal for two reasons.  First, when considering a Rule 12(b)(6) motion such as the motion filed by defendants Murray and Cooke, in addition to considering the contents of the complaint, a court may take into account "concessions" in a plaintiff's response to the dismissal motion. *See Martínez-Rivera v. Commonwealth of P.R.*, 812 F.3d 69, 74 (1st Cir. 2016) (citing *Arturet-Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005)). Middleton's response to the defendants' contention that the complaint should be dismissed based on Middleton's failure to exhaust administrative remedies is such a concession.  Second, Middleton seeks affirmative relief in his Motion to Grant Plaintiff's Complaint (Dkt. No. 41). Because Murray and Cooke have not waived their failure to exhaust defense and have presented evidence sufficient to meet their burden of proof, Middleton cannot obtain the affirmative relief he seeks without showing that he exhausted his administrative remedies as a prerequisite to pursuing his to claims against Murray and Cooke. *See, e.g., Medina-Claudio*, 292 F.3d at 36 (a prisoner must exhaust administrative remedies before commencing an action); *Sergentakis*, 272 F. Supp. 3d at 227 (same).

On the question of exhaustion of administrative remedies for his medical care at FMC Devens, Middleton's response is unambiguous.  In Middleton's Motion to Grant Plaintiff's Complaint, Middleton states that his administrative remedies were fully exhausted on October 2,

2017 in communications with the central office in Washington, D.C. (Dkt. No. 42 at 12). According to the defendants' submission, Middleton received a final denial of his request for administrative relief from the BOP's Office of General Counsel at the Central Office that was dated October 2, 2017 (Dkt. No. 29-1 at 24).  Middleton contends that he was not required to file a separate administrative grievance while he was held at FMC Devens because the grievance he filed about deficiencies in his medical care at FCI Estill concerned the lack of treatment for the torn ligaments in his elbow and his claims about an Eighth Amendment violation at FMC Devens are based on the continuing failure to treat this same injury or condition (Dkt. No. 42 at 12).  Whether this information is characterized as a concession on which the court can rely in ruling on Murray and Cooke's Rule 12(b)(6) motion to dismiss, or a barrier at the starting gate with respect to Middleton's affirmative claim for relief in his Motion to Grant Plaintiff's Complaint, the result is the same:  Middleton's claims as to Murray and Cooke must be dismissed without prejudice for failure to exhaust administrative remedies as to the medical care he received from federal officials at FMC Devens.  *See Acosta*, 445 F.3d at 514; *White*, 2020 WL 1974333, at *4-5; *Sergentakis*, 272 F. Supp. 3d at 227.

IV.    CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss Plaintiff's Complaint is GRANTED.  The dismissal is without prejudice.  Middleton's Motion to Grant Plaintiff's Complaint is DENIED.  The Clerk's Office is directed to close the case on the court's docket.

It is so ordered.

Dated:  October 15, 2020                          /s/ Katherine A. Robertson
                                                  KATHERINE A. ROBERTSON
                                                  U.S. MAGISTRATE JUDGE